UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| **WILNEKA BOOKER, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CLIENT SERVICES, INC. and JOHN DOES 1-25,**<br><br>**Defendants.** | Case No.: 1:18-cv-03414<br><br>Honorable Andrea R. Wood |

**DEFENDANT CLIENT SERVICES, INC.'S REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Client Services, Inc. ("CSI"), and files this Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, and will show onto this Court as follows:

**INTRODUCTION**

1. CSI files its Motion for Summary Judgment on June 4, 2019. Doc. 17. Plaintiff filed her Response on July 9, 2019. Doc. 22. This entire case depends on whether interest and fees were accruing on the debt. If interest and fees were accruing on the debt, summary judgment must be granted to CSI.

2. In her Response, Plaintiff attempts to prove that CSI violated the FDCPA based on the alleged actions of the underlying creditor, Fifth Third Bank ("Fifth Third"). *Id.* In effect, Plaintiff wants the Court to hold CSI liable under the FDCPA for alleged and unsupported deficiencies in Fifth Third's internal record keeping and Fifth Third's alleged handling of the debt.

3.	Plaintiff's arguments fall short of accomplishing this. First, Plaintiff is incorrect about her allegations towards Fifth Third and CSI. Second, CSI is not responsible for the actions or alleged actions of Fifth Third and is allowed to rely on the representations made to it by Fifth Third. The truth of the matter is that interest and fees were accruing on the debt while the debt was placed with CSI, and CSI's letters accurately conveyed that information to Plaintiff. As explained fully in this Reply, this Court should grant summary judgment to CSI and dismissal all claims against CSI with prejudice.

## ARGUMENTS AND AUTHORITIES

### A. Plaintiff's allegations concerning the debt are incorrect

4.	Plaintiff makes three main allegations concerning the amount of the debt: (1) Fifth Third account records reveal completely different loan amounts than those Defendant sought to collect; (2) the balance of the debt was actually decreasing, not increasing; and (3) Fifth Third was not collecting any interest but was continuously waiving any assessed interest and fees on the account. Doc. 22 at 1-5. In looking at the records of Fifth Third, it is necessary to keep in mind that the account was placed with CSI only between June 17, 2017 and September 14, 2017. Doc. 17-3. Any conduct occurring outside that time period cannot be attributed to CSI.

5.	As to Plaintiff's first allegation, the supposed Internal Installment Loan History ("Loan History") attached by Plaintiff shows a charge off amount of $6,923.46 on November 14, 2106. Doc. 22-2 at 7. CSI's records show that the account was placed with CSI with a same charge off amount of $6,923.46. Doc. 17-3. When the debt was placed with CSI, Fifth Third also represented to CSI that $1515.83 in interest had accrued on the debt, for a total of $8439.29. This is the same balance included in the first letter sent to Plaintiff. Doc. 17-2 at 2. Therefore, the idea that the Loan History shows an entirely different debt about is incorrect.

6.  As to Plaintiff's second allegation, whether the debt decreased in price before being placed with CSI is immaterial to this lawsuit or CSI's liability. The Loan History shows that changes were made to the amount of the debt at various times. Doc. 22-2. This, however, has no bearing on this case. What is germane to this case is that the Loan History showed an interest rate of 6.18%, which was later adjusted to 4.663% in October 2017. *Id.*; Doc. 22-1 (stating an interest rate of 4.663% going forward from date of affidavit). Thus, while the account was placed with CSI, there was interest accruing on the debt. This fact is reflected in Fifth Third's records, CSI's records, and the letters sent to Plaintiff. Whether Fifth Third adjusted the principal down at some point has no bearing on this fact. Further, Plaintiff admits to that the debt was not static when it was placed with CSI in her response to CSI's Statement of Material Facts. Doc. 23 at 3.

7.  As to Plaintiff's third allegation, it fails for the very same reason. The evidence before the Court show interest was accruing on the debt. Doc. 17-1; Doc. 17-2; Doc. 17-3; Doc. 22-1; Doc. 22-2. The evidence shows that Fifth Third was not waiving interest when the debt was placed with CSI. Doc. 17-1; Doc. 17-2; Doc. 17-3. Further, the affidavit from Fifth Third that Plaintiff submitted shows that Fifth Third was seeking interest in the state court case filed against Plaintiff. Doc. 22-1. Plaintiff herself "acknowledges that both Defendant and Fifth Third Bank have provided Affidavits stating that Ms. Booker's loan continued to accrue interest and fees over the life of the loan." Doc. 22 at 4. Plaintiff's attempt to disprove these via the records of Fifth Third fail. There is no evidence before the Court— and no statement or affidavit from Fifth Third—that Fifth Third waived any rights it had to collect interest on the debt.

8.  The only evidence before the Court shows that Fifth Third Bank was charging interest on the loan before and at the time it was placed with CSI. The evidence further shows that, after placing the debt with CSI, Fifth Third continued to charge interest on the loan and gave CSI periodic updates on the new balance on the loan. Doc. 17-1; Doc. 17-2; Doc. 17-3. The interest and fees accruing on the

debt is clearly demonstrated through the increasing balances show on each letter sent to Plaintiff. Doc. 17-2. Therefore, the only conclusion this Court can draw is that interest was accruing on the debt, and therefore the letters were not misleading.

### B. CSI is allowed to rely on the representations made to it by Fifth Third Bank

9. Various courts have held that a collector is allowed to rely on the representations of its clients, as long as the creditor does not have a reason to doubt the accuracy of the information. *See, e.g.*, *Clark v. Capital Credit Collection Serv.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("Within reasonable limits, Capital and Hasson were entitled to rely on their client's statements to verify the debt. . . . Moreover, the FDCPA did not impose upon them any duty to investigate independently the claims presented by Dr. Evans."); *Murphy v. Stupar, Schuster & Bartell, SC*, 337 F. Supp. 3d 837, 846 (W.D. Wis. 2018) ("The debt collector does not have to verify the validity of the underlying debt."). While the cases that address the reasonable reliance arguments under the FDCPA usually focus on verification of a debt under section 1692g(b), the same rationale applies here.

10. Fifth Third represented to CSI that interest was accruing on the debt. XXX Fifth Third provided CSI with periodic updates on the balance of the debt that reflected interest and fees accruing on the debt. XXX. CSI had no reason to doubt that Fifth Third's representations were inaccurate and no reason to suspect that interest and fees were not accruing on the debt. CSI relayed to Plaintiff what it believed to be true (and was in fact true, as shown by the evidence before the Court): interest and fees were accruing on the debt. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Its purpose is not to punish CSI for relaying information that Fifth Third represented was true.

11. This situation is akin requesting verification under section 1692g and a debt collector relying on the representations of its creditors, as that's what CSI did in this case. If Plaintiff had requested verification under section 1692g(b), then CSI would have relayed the same information about the debt,

that interest and fees were accruing on the debt. For these reasons, should this Court follow Plaintiff's faulty factual assumptions, this Court should not punish CSI for any misrepresentations made to CSI by Fifth Third regarding any interest or fees accruing on the debt.

### C. The letters were not misleading and did not overshadow Plaintiff's rights

12.     Interest and fees were accruing on the debt. Both CSI and Fifth Third have affidavits before this Court now showing that interest and fees were accruing, as Plaintiff acknowledges. XXX. Because fees and interest were accruing, it is readily apparent that CSI did not make any false or misleading statements. The letter accurately conveyed the amount of the debt that was owed at the time the letter was sent, and the letter disclosed to Plaintiff that the balance was increasing. Further, the language used in the letter that Plaintiff complains of tracks the safe harbor language developed by the Seventh Circuit in *Miller v. McCalla, Raymer, Padrick, Cobb,* 214 F.3d 872, 875 (7th Cir. 2000) for dunning letters that referenced debts that were accruing interest and fees. In *Miller*, the Seventh Circuit developed safe harbor language which included the language "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." (cited in full *infra*). The Seventh Circuit held that use of the safe harbor language, as used by CSI in this case, "satisfies the debt collector's duty to state the amount of the debt in cases like this where the amount varies from day to day . . . ." *Id.* Just as with the safe harbor language in Miller, the language used by CSI in this case accurately conveyed the amount of the balance due at the time of the letter and accurately conveyed that interest and fees were accruing on the debt. Therefore, the letter complies fully with sections 1692g and 1692e of the FDCPA. *See Washington v. Portfolio Recovery Assocs., LLC,* 211 F. Supp. 3d 1041, 1051 (N.D. Ill. 2016) ("While the Court agrees that the Miller safe harbor was fashioned specifically for § 1692g 'amount of debt' claims, it nonetheless finds Miller instructive in evaluating Plaintiff's claims under §§ 1692e and 1692f."); *Wilder v. J.C. Christensen & Assoc., Inc.*, No. 16-CV-1979, 2016

WL 7104283, at *4 (N.D. Ill. Dec. 6, 2016) ("[U]se of the language from *Miller* or *Taylor* remains instructive for evaluating a Section 1692e claim.").

13. Interest and fees were accruing on the debt. XXX. The letters accurately conveyed this information and accurately conveyed the amount of the debt in accordance with section 1692g(a) and established Seventh Circuit law. Therefore, there were not any false or misleading representations in the letter. Use of the *Miller* safe harbor language, which was appropriately used in this case, satisfies the requirements of section 1692g(a). Finally, nothing in the letter overshadowed Plaintiff's rights under 1692g(b). There could not have been any "fear of incurring falsely threatened additional charges" as there were no falsely threatened additional charges. Plaintiff had every opportunity to dispute the debt under section 1692g(b), in which she would have received confirmation that interest and fees were accruing on the debt. Therefore, there cannot have been any violation of section 1692g(b). For these reasons, summary judgment should be granted to CSI and all claims against CSI should be dismissed with prejudice.

## CONCLUSION

14. The evidence before the Court shows that interest and fees were accruing on the debt. The affidavits from CSI and Fifth Third Bank, CSI's internal notes, and the Loan History all show interest was accruing on the debt when it was placed with CSI. CSI used the *Miller* safe harbor language developed by the Seventh Circuit, and therefore cannot be liable for any FDCPA violations in this case. For these reasons, this Court should grant CSI's Motion for Summary Judgment and dismiss all claims against CSI with prejudice.

WHEREFORE, PREMISES CONSIDERED, Defendant Client Services, Inc., respectfully requests that this Court grant CSI's Motion for Summary Judgment and dismiss all claims against CSI with prejudice.

Respectfully submitted,

**MALONE FROST MARTIN PLLC**

*/s/ Robbie Malone*
ROBBIE MALONE
Texas State Bar No. 12876450
Email: rmalone@mamlaw.com
EUGENE XERXES MARTIN, IV
Texas State Bar No. 24078928
Email: xmartin@mamlaw.com
JACOB MICHAEL BACH
Texas State Bar No. 24100919
Email: jbach@mamlaw.com
**MALONE FROST MARTIN PLLC**
NorthPark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT CLIENT SERVICES, INC.***

## CERTIFICATE OF SERVICE

The undersigned, attorney of record for Defendant, hereby certifies that on August 8, 2019 he served a copy of the above Reply on Plaintiff's counsel by electronic means pursuant to ECF.

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV